**PRICE LAW GROUP, APC**
David A. Chami, AZ #027585
1204 E Baseline Rd., Suite 102
Tempe, AZ 85283
P: 818-907-2133
Fax: 866-401-1457
david@pricelawgroup.com
*Attorneys for Plaintiff Stephen Lynch*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN T. LYNCH,<br><br>    Plaintiff,<br><br>    vs.<br><br>OCWEN LOAN SERVICING, LLC.; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; and DOES 1 to 10, inclusive,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:**<br><br>1. FAIR CREDIT REPORTING ACT [15 USC § 1681 et. seq.] |

## INTRODUCTION

1. Stephen T. Lynch ("Plaintiff") brings this action to secure redress from Ocwen Loan Servicing, LLC ("Ocwen"), Experian Information Solutions Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax") (herein collectively as "Defendants") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

## PARTIES

2. Plaintiff Stephen T. Lynch is a consumer, a natural person allegedly obligated to pay a debt, and a citizen of the United States of America who presently resides in Maricopa County, Arizona.

- 1 -

3. Defendant, Ocwen Loan Servicing LLC (hereinafter "Ocwen"), is a Delaware limited liability company, headquartered in the State of Florida, with its mailing address at 1661 Worthington Rd. Suite 100, West Palm Beach, FL 33409. Ocwen is an entity which engaged in the practice of furnishing consumer information to consumer reporting agencies, and is therefore a "furnisher of information" as contemplated by 15 U.S.C. § 1681s-2(a) & (b), of the FCRA. Ocwen is also a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6). Ocwen can be served through its registered agent Corporation Service Company located at 2338 W. Royal Palm Rd. STE – J, Phoenix, AZ 85021.

4. Defendant, Experian Information Solutions, Inc. (hereinafter "Experian") is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian can be served through its registered agent CT Corporation System located at 3800 N Central Ave., Suite 460, Phoenix, Arizona 85012.

5. Defendant, Equifax Information Services, LLC, (hereinafter "Equifax") is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax can be served

COMPLAINT

through its registered agent Prentice-Hall Corp System located at 2338 W Royal Palm Rd., Suite-J, Phoenix, Arizona 85021.

6. Upon information and belief, Experian, Equifax and TransUnion disburse the consumer reports to third parties under contract for monetary compensation.

7. At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## JURISDICTION

8. Jurisdiction of this Court arises pursuant to 15 U.S.C. § 1681(p), which states that such actions may be brought and heard before "any appropriate United States district court, without regard to the amount in controversy."

9. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District. Because Defendants transact business here, personal jurisdiction is established.

## FACTUAL ALLEGATIONS

10. In or around 2009, Plaintiff obtained a primary and secondary mortgage to purchase a home located at 232 East Manhatton Drive, Tempe, Arizona 85283 (hereinafter the "Property").

11. The primary mortgage was obtained from Wells Fargo, and the secondary mortgage was obtained from Litton Loan Servicing. The secondary mortgage was eventually transferred or sold to Ocwen, account no. 709597XXXX (hereinafter "Account").

12. The mortgage loans were used to purchase the Property and therefore are considered "Purchase Money" and subject to Arizona Anti-Deficiency statute, A.R.S. §33-814(G) which states that "If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, **no action may be maintained to recover any difference between the amount obtained by sale and amount of the indebtedness and any interest, costs and expenses.**" (emphasis added)

13. In or around September 2010, Plaintiff defaulted on both of his mortgages.

14. Plaintiff's Property was eventually foreclosed on and the property was sold at a Trustee's sale on January 3, 2011 for $240.006.67.

15. Pursuant to Arizona Revised Statute §33-814(G) Defendant Ocwen would not have any rights to collect on the deficiency balance of this purchase money loan obtained by Plaintiff.

16. Unbeknownst to Plaintiff, Ocwen began inaccurately reporting the debt on Plaintiff's credit report and continued to do so every month following the foreclosure.

17. In or around 2013, Plaintiff was looking to purchase a home and pulled his credit report through CISCO Credit Information Services Company and discovered that both the Litton and Ocwen loans were reporting his secondary mortgage on his credit report as open, past due with a balance owing of more than $38,000.00; Ocwen continued to report Plaintiff as late each and every month following the foreclosure.

18. Plaintiff was told that if he wanted to get financing for a mortgage at a favorable interest rate, he would first have to resolve the inaccurate trade line to restore his credit.

19. On or about July 18, 2013, in an effort to correct the inaccurate information, Plaintiff sent dispute letters to CISCO to dispute the inaccurate reporting. The dispute letters sent to CISCO explained that the home had been foreclosed on in January 5, 2011.

20. Upon information and belief, CISCO forwarded the dispute to Experian, Equifax, and TransUnion as it related to the Litton Loan trade line and also forwarded disputes to Experian and Equifax only related to the Ocwen account as the Ocwen account was not reporting to Trans Union at that time.

21. Plaintiff did not receive any responses from Experian, Equifax or TransUnion related to the disputes.

22. On or about September 25, 2015, Plaintiff disputed both the Litton and Ocwen trade lines with CISCO a second time. The second dispute letter explained that the Property was sold at auction on January 3, 2011. Plaintiff also wrote "[s]ince we're a 'no fault' state, neither of these accounts should show a balance or derogatory credit after the foreclosure…"

23. Upon information and belief, CISCO forwarded the dispute to Experian, Equifax, and TransUnion.

24. Once again, Plaintiff did not receive any responses from Experian, Equifax or TransUnion.

25. On or about January 7, 2016, Plaintiff pulled a second credit report and found that Experian and Equifax were still inaccurately reporting the Ocwen Account. TransUnion did not report the account; The Litton Loan was no longer reporting

26. Equifax and Experian were reporting the Ocwen account as closed in January of 2016; Plaintiff's Credit Score was 703 out of a possible 850.

27. Experian was reporting the Account as a second mortgage with a balance of $38,283.00, past due amount of $26,047.00, and past due by 180 days.

28. Equifax was reporting the Account as having a balance of $38,283.00, past due amount of $26,047.00, past due by 120 days, and four missed payments.

29. On or about January 11, 2016, Plaintiff sent out a third round of dispute letters. Plaintiff sent the dispute letters by USPS certified mail directly to Experian, tracking no: 7015 0640 0004 5415 0743, and to Equifax, tracking no: 7015 0640 0004 5415 0736.

30. The dispute letter explains that the Account is reporting incorrectly, the Property was foreclosed, and under Arizona law, Plaintiff is not liable for any deficiency amount.

31. Equifax received the dispute on January 15, 2016.

32. Equifax failed to respond to Plaintiff's dispute.

33. Experian received the dispute on January 15, 2016.

34. On or about February 2, 2016, Plaintiff received a response from Experian. The results showed the Account as having a recent balance of $38,283. The Account also reported status as "charge off," "written off" and "past due as of Feb 2016."

35. Experian's dispute results did not correct the inaccurate reporting that Plaintiff had laid out in his dispute letter. The revision did not show a zero balance or that the debt had been foreclosed on. More alarming, the report is showing that Plaintiff had a recent balance as of February 2016 even though the house was foreclosed on in 2011.

36. On February 6, 2016, Plaintiff pulled a third credit report. This time, Experian was reporting the Account as closed, balance of $38,283.00, past due of $26,433.00, and payment status as "Charge-off." Equifax was reporting the Account as closed, balance of $38,283.00, past due of $26,433.00, payment status as "charge off," "bad debt," and "placed for collection."

37. On April 7, 2016, Plaintiff pulled a fourth credit report. This time, Experian was showing the Account as "Open." Balance of $38,283.00, past due of $27,205.00, past due 180 days. Equifax was also showing the account as "Open." Balance of $38,283.00, past due of $27,205.00, and at least 120 days or more past due; Trans Union was still not reporting the account

38. However, by April, with no other noticeable changes to Plaintiff's credit, Plaintiff's score was now a 641 out of a possible 850.

39. Within a two-month period, the credit bureaus updated the Ocwen Trade line from a closed account to an open account even though the account was part of a foreclosure action in 2011.

40. With the status of the credit reports constantly changing, Plaintiff decided to pull a fifth credit report on May 19, 2016. To Plaintiff's surprise, in addition to Experian

and Equifax reporting the same information, TransUnion began reporting the Account as "open," balance of $38,283.00, past due of $27,592.00 and 120 days past due.

41. On or about May 25, 2016 Plaintiff sent a dispute letter to Trans Union to dispute the newly inaccurate information on his credit report.

42. Despite Plaintiff's exhaustive efforts to date to remove the erroneous information, Defendants have nonetheless repeatedly, deliberately, willfully, intentionally, recklessly, and negligently failed to perform reasonable investigations of the above disputes as required by the FCRA, have failed to remove the inaccurate information, have failed to include accurate information, have failed to report on the results of the reinvestigations and have continued to report the derogatory information about Plaintiff.

43. As a result of Defendants' conduct, Plaintiff has suffered actual damages and serious financial and pecuniary harm arising from monetary losses related to credit denials, loss of use of funds, loss of credit and loan opportunities, excessive and/or elevated interest rate and finance charges, out-of-pocket expenses including, but not limited to, local or long distance telephone charges, postage, faxing and other related costs, all of which will continue into the future to Plaintiff's great detriment and loss.

44. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of financial and dignitary harm arising from the injury to credit rating and reputation, and Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss.

45. As a result of Defendants' conduct, Plaintiff has suffered a decreased credit score as a result of the negative entry appearing on Plaintiff's credit file, preventing him from being able to obtain credit.

46. As a result of Defendants' conduct, Plaintiff has suffered great emotional and mental pain and anguish, and Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss.

### FIRST CAUSE OF ACTION
### All Defendants
### Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*

47. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

48. The FCRA requires a furnisher such as Ocwen, after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by that furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

49. From in or around January 2011 until the Present, Ocwen has provided inaccurate information to the credit reporting agencies.

50. During that time, Plaintiff notified Defendants that the reported payment history was inaccurate. Thereafter, the credit reporting agencies notified Defendant Ocwen that

Plaintiff was disputing the information it had furnished to the credit reporting agencies.

51. Defendant Ocwen violated sections 1681n and 1681o of the FCRA by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(a), (b):

    (a)    Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

    (b)    Willfully and negligently failing to review all relevant information concerning Plaintiff mortgage;

    (c)    Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

    (d)    Willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

    (e)    Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

    (f)    Willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiff to the credit reporting agencies; and

    (g)    Willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(a), (b).

52. Defendant Ocwen's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff that are outlined more fully above, and as a result, Defendant is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as other such relief, permitted by 15 U.S.C. § 1681n.

53. The FCRA provides that if the completeness or accuracy of any item of information contained in a consumer's file at a *consumer reporting agency* is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or delete the item from the file within thirty (30) days of receiving the consumer's dispute notice. 15 U.S.C. § 1681i(a)(2)(A).

54. The Act further requires the credit reporting agency, within 5 business days of receiving notice of the consumer's dispute, to provide notification of the dispute to the person who furnished the information in dispute and requires the credit reporting agency to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).  In conducting its reinvestigation of disputed information in a consumer report, the credit-reporting agency is required to "review and consider all relevant information submitted by the consumer."

55. The Defendants, credit-reporting agencies, failed to conduct a reasonable reinvestigation of the inaccuracy that the Plaintiff disputed.

56. The Defendants, credit-reporting agencies, failed to review and consider all relevant information submitted by Plaintiff.

57. The Defendants, credit reporting agencies, failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information, and file, in violation of 15 U.S.C. § 1681e(b).

58. As a result of the above-described violations of § 1681i and § 1681e(b), Plaintiff has sustained damages.

59. The Defendants, credit-reporting agencies, violations of the FCRA were willful and therefore Plaintiff is entitled to seek statutory and punitive damages.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully request that judgment be entered against Defendant for the following:

A. Actual damages;

B. Statutory damages;

C. Costs and reasonable attorney's fees;

D. Any pre-judgment and post judgment interest as may be allowed under the law; and

E. For such other and further relief as the Court may deem just and proper.

//

//

//

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a trial by jury in this action.

DATED this 26th day of May, 2016,

            **PRICE LAW GROUP, APC**

            By: /s/David A. Chami

            David A. Chami
            *Attorneys for Plaintiff Stephen T. Lynch*